J-S69031-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D.J.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2672 EDA 2019 |

Appeal from the Order Entered August 16, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000573-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: A.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2673 EDA 2019 |

Appeal from the Order Entered August 16, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000999-2017

BEFORE:   SHOGAN, J., KUNSELMAN, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                    **FILED JANUARY 29, 2020**

Appellant, S.B. ("Mother"), appeals from the order entered August 16, 2019, that terminated her parental rights to her younger surviving child, A.D.J.T. ("Child"), born 2017.  Although Mother only raises claims related to this termination order at Docket Number CP-51-AP-0000573-2019 ("No. AP-

_____

* Retired Senior Judge assigned to the Superior Court.

573"), she also filed a separate notice of appeal listing the docket number from the related dependency action, Docket Number CP-51-DP-0000999-2017 ("No. DP-999"). After careful review, we affirm the trial court's order terminating Mother's parental rights at No. AP-573, and we quash the appeal from the dependency action, No. DP-999.

Prior to Child's birth, three of her siblings had died while in Mother's care: S.T.W. died in 2008 when he was seven months old; D.B. died in 2009 when he was five years old; and G.Z.B. died in 2012 when he was 18 months old. Trial Court Opinion ("TCO"), filed October 3, 2019, at 2; Exhibit DHS-10. The causes of death of S.T.W. and G.Z.B. were undetermined.

In October 2014, Mother gave birth to J.K.A.B.; both J.K.A.B. and Mother tested positive for marijuana when he was born. *See* Exhibit DHS-8. Shortly after his birth, the Philadelphia Department of Human Services ("DHS") removed J.K.A.B. from Mother's custody and placed him in foster care. *See id.*

Psychologist William Russell, Ph.D., performed a Parenting Capacity Evaluation ("PCE") of Mother in 2015 and a second PCE in 2017. TCO, filed October 3, 2019, at 2, 5. Both PCEs "concluded that Mother lacked the capacity to provide safety and permanency for her children" due to significant cognitive impairment. *Id.* at 2.

In April 2017, "DHS received a General Protective Services ('GPS') report which alleged Mother gave birth to Child A.D.J.T." *Id.*

On November 14, 2017, the Court of Common Pleas of Philadelphia County involuntarily terminated Mother's parental rights to J.K.A.B.; this Court affirmed the termination order on August 3, 2018. *In re J.K.A.B.*, No. 4082 EDA 2017, unpublished memorandum at 1 (Pa. Super. filed August 3, 2018).[1] This Court agreed with the trial court that "[t]he record demonstrated Mother's ongoing unwillingness to provide care or control for [J.K.A.B]; to perform any parental duties and a failure to remedy the conditions that brought [J.K.A.B.] into care in a reasonable period of time" and that "termination of Mother's parental rights would be in the best interest of [J.K.A.B.]." *Id.* at 11 (quoting TCO, Docket Numbers CP-51-AP-0000775-2017 and CP-51-DP-0002461-2014, filed February 16, 2018, at 4-5). In doing so, this Court noted that Dr. Russell's conclusion from both the 2015 and 2017 PCEs "was that Mother lacked the capacity to parent [J.K.A.B.] because she suffered from a major depressive disorder and lacked the necessary insight to parent responsibly and effectively." *Id.* at 12 (quoting TCO, Docket Numbers CP-51-AP-0000775-2017 and CP-51-DP-0002461-2014, filed February 16, 2018, at 5-6).

"On August 28, 2017, Child was adjudicated dependent." TCO, filed October 3, 2019, at 2. On October 3, 2018, Child was placed in the same foster home as J.K.A.B. Permanency Review Order, 10/3/2018, at 2.

---

[1] This Court's decision in *J.K.A.B.*, No. 4082 EDA 2017, was admitted without objection as Exhibit DHS-16 in the current termination action. N.T., 8/16/2019, at 31-32.

On December 5, 2018, Mother underwent her third [PCE by Dr. Russell]. The PCE noted that Mother had stopped taking her prescribed medication and that she suffered from a major depressive disorder. The PCE recommendations included that Mother (1) maintain mental health treatment; (2) refrain from using illicit substances and . . . (3) . . . maintain employment and develop a sustainable financial plan.

On January 16, 2019 a [Single Case Plan ("SCP")] was created. The parental objectives for Mother were that she (1) follow court orders; (2) continue to participate in . . . mental health treatment; (3) continue to visit the Child; (4) cooperate with the Community Umbrella Agency ("CUA"); (5) and . . . participate in housing and parenting counseling and maintain employment. On August 1, 2019, DHS filed the underlying Petition[] to Terminate Parental Rights [at No. AP-573] since Mother was unable to maintain her [SCP] objectives. Specifically, Mother had a history of drug use, severe mental health issues and suicide attempts.

TCO, filed October 3, 2019, at 2-3 (citations omitted). On the same date, DHS also filed a separate petition for goal change to adoption at No. DP-999.

On August 16, 2019, the trial court held a hearing on the termination petition. *Id.* at 1. "Mother was present at the hearing and represented by counsel. The Child was represented at the hearing by a separate Guardian Ad Litem and Child Advocate." *Id.*[2]

---

[2] *See In re L.B.M.*, 161 A.3d 172, 173-75, 180 (Pa. 2017) (plurality) (courts must appoint counsel to represent the legal interests of any child involved in a contested involuntary termination proceeding; a child's legal interests are distinct from his or her best interest, in that a child's legal interests are synonymous with the child's preferred outcome, and a child's best interest must be determined by the court); *see also In re T.S.*, 192 A.3d 1080, 1089-93 (Pa. 2018) (a child's statutory right to counsel is not waivable, even where the child is too young or nonverbal to communicate his or her preference; reaffirming the ability of an attorney-guardian *ad litem* to serve a dual role and represent a child's non-conflicting best interests and legal interests); *In re G.M.S.*, 193 A.3d 395, 399-400 (Pa. Super. 2018) (orphans' court not required to appoint separate attorney to represent children's legal interests).

At the termination hearing, Dr. Russell testified that Mother "is still unable to provide safety and permanency" for Child.  N.T., 8/16/2019, at 27. Dr. Russell opined that, due to "her developmental history" and "mental health issues," Mother is "just not able to provide the environment the child needs in order to thrive."  *Id.* at 28.  When asked if there were "anything [M]other could do to rehabilitate . . . her ability to care for [C]hild[,]" Dr. Russell answered:

> At this point I think her functioning is fairly stable and I don't know that it's actually going to have much room to change. . . . I don't think that any time in the near future she'll be able to provide that environment that a child needs in order to grow and thrive.

*Id.* at 30.

CUA case manager, Alina Keyan, testified that Mother had not developed a childcare plan, N.T., 8/16/2019, at 36, and that Mother "remained unemployed[,]" "had no financial plan[,]" and "was unable to keep up with Child's significant medical needs."  TCO, filed October 3, 2019, at 6 (citing N.T., 8/16/2019, at 43).  Keyan explained that Child's needs include speech, physical, and occupational therapy and weekly medical appointments with her primary care physician and a gastrointestinal specialist and that Child also had future appointments scheduled for a sleep study and for an evaluation by an ear, nose, and throat doctor.  N.T., 8/16/2019, at 13, 48.  Keyan stated that Child requires these appointments, because, when she "was first put in the foster home she could barely walk[,]" could not "hold food down[,]" would

"drool[,]" and had problems with "[h]er eyesight" and "issues with her ears[,]" requiring "tubes in her ears[.]" *Id.* at 41-42, 48.

Keyan continued that Child's foster family "take[s] care of all of her needs[,]" "took her to every appointment[,]" and "would be able to provide for all of her needs[.]" *Id.* at 13, 15. She added that the J.K.A.B. had been adopted by the foster family and that the family was willing to adopt Child as well if Mother's parental rights were terminated. *Id.* at 12.

Keyan believed that "Child would not suffer irreparable harm if Mother's parental rights were terminated and that it would be in Child's best interest if the Mother's parental rights were terminated." TCO, filed October 3, 2019, at 6 (citing N.T., 8/16/2019, at 13-16).

> At the conclusion of the hearing, the trial court found clear and convincing evidence to involuntarily terminate the parental rights of Mother and to change the goal of the Child to adoption pursuant to 23 Pa.C.S.[] § 2511(a)(1)(2)(5)(8)[.]

*Id.* at 1. The trial court additionally "found that termination of Mother's parental rights was in the best interest of Child pursuant to 23 Pa.C.S.[] § 2511(b)." *Id.* at 3.[3] Further, by separate order entered that same day at No. DP-999, the trial court changed Child's permanency goal from reunification to adoption.

---

[3] By separate order entered August 16, 2019, the trial court also involuntarily terminated the parental rights of Child's biological father, D.C.J., who has not filed an appeal and is not a party to the instant appeal.

On September 13, 2019, Mother filed two separate notices of appeal at No. AP-573 and at No. DP-999, each with an identical concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(a)(2)(i).[4]

Mother presents the following issues for our review:

> 1.    Did the [DHS] sustain the burden that Mother's rights should be terminated when there was evidence that Mother had completed and/or had been actively completing her permanency goals?
>
> 2.    Was there . . . sufficient evidence presented to establish that it was in the best interest of the child to terminate Mother's parental rights?

Mother's Brief at 4 (trial court's answers omitted).

**No. DP-999**

Mother does not challenge the goal change in the "Statement of Questions Involved" section of her appellate brief and does not develop any argument with respect to this issue on appeal. *Id.* at 4, 9-16. Hence, we quash Mother's appeal at No. DP-999. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); *Commonwealth v. Spotz*, 18 A.3d 244, 281 n.21 (Pa. 2011) (without a "developed, reasoned, supported, or even intelligible argument[, t]he matter is waived for lack of development"); *In re M.Z.T.M.W.*, 163 A.3d 462, 465–66 (Pa. Super. 2017) ("this Court will not review a claim unless it is developed in the argument section of an appellant's

---

[4] The trial court entered its opinion on October 3, 2019. *See* Pa.R.A.P. 1925(a)(2)(ii).

brief, and supported by citations to relevant authority" (citing *In re W.H.*, 25

A.3d 330, 339 n.3 (Pa. Super. 2011)).

**No. AP-573**

We now consider Mother's issues concerning the involuntary termination

of her parental rights to Child in light of our well-settled standard of review:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.
>
> The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result.

*In re B.J.Z.*, 207 A.3d 914, 921 (Pa. Super. 2019) (internal quotation marks

and some internal citations omitted) (some formatting).

Termination of parental rights is governed by Section 2511 of the

Adoption Act, 23 Pa.C.S. §§ 2101-2938. "Our case law has made clear that

under Section 2511, the court must engage in a bifurcated process prior to

terminating parental rights." *B.J.Z.*, 207 A.3d at 921 (citation omitted).

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re G.M.S.*, 193 A.3d 395, 401 (Pa. Super. 2018) (citation omitted).

<u>23 Pa.C.S. § 2511(a)</u>

In the current action, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8). This Court will affirm if it agrees with the trial court's decision as to any one subsection of 23 Pa.C.S. § 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We affirm the trial court's decision to terminate Mother's parental rights to Child under subsections 2511(a)(2), which provides:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds: . . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

Mother contends that DHS "failed to establish by clear and convincing evidence the elements of 23 Pa.C.S.[] § 2511(a)(1), (2), (5) and (8)." Mother's Brief at 8. Mother broadly maintains that she "was consistent with

satisfying her [SCP] objectives" and "followed the recommendations [of] the PCE." *Id.* at 10. Mother provides no citations to the record in support of these statements. *See id.* Mother's only argument specifically related to Section 2511(a)(2) was that she "had participated in the services afforded to her through [DHS]" while simultaneously maintaining that she was not provided any services to assist with her cognitive impairment. *Id.* at 11.

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.
>
> The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.

*In re T.L.C.*, 199 A.3d 1270, 1278 (Pa. Super. 2018) (internal citations and quotation marks omitted) (some additional formatting).

Pursuant to our review of the record for the first element of 23 Pa.C.S. § 2511(a)(2), *see T.L.C.*, 199 A.3d at 1278, we begin with the PCEs conducted by Dr. Russell in 2015 and 2017, both of which "concluded that Mother **lacked the capacity** to provide safety and permanency for her children" due to significant cognitive impairment. TCO, filed October 3, 2019, at 2 (emphasis added); *see also* Exhibit DHS-16, *J.K.A.B.*, No. 4802 EDA 2017, at 12 (both the 2015 and 2017 PCEs concluded that "Mother **lacked**

**the capacity** to parent . . . because she suffered from a major depressive disorder and lacked the necessary insight to parent responsibly and effectively" (emphasis added) (quoting TCO, Docket Numbers CP-51-AP-0000775-2017 and CP-51-DP-0002461-2014, filed February 16, 2018, at 5-6). At the termination hearing concerning Mother's parental rights to Child, Dr. Russell testified that Mother "is **still unable** to provide safety and permanency" for Child due to Mother's "developmental history" and "mental health issues[.]" N.T., 8/16/2019, at 27-28 (emphasis added); **see also** TCO, filed October 3, 2019, at 2, 5 (summarizing 2018 PCE and Dr. Russell's testimony that Mother "suffered from a major depressive disorder" and, despite treatment, "was **unable** to provide safety and permanency for the Child" (emphasis added)). Consequently, Dr. Russell's testimony and all three of the PCEs that he authored had established Mother's "incapacity"; additionally, this "incapacity" was "repeated and continued" as these exact same conditions existed when J.K.A.B. was removed from Mother's care in 2014, when the first two PCEs were conducted in 2015 and 2017, and when Dr. Russell testified at the hearing on the present termination petition in 2019. Also, this "incapacity" stemmed from the same causes throughout this period – Mother's developmental history and mental health issues. The evidence

consequently established the first element of 23 Pa.C.S. § 2511(a)(2), "repeated and continued incapacity[.]" **T.L.C.**, 199 A.3d at 1278.[5]

For the next element needed to establish Section 2511(a)(2), **see T.L.C.**, 199 A.3d at 1278, Keyan testified that Child's daily physical needs have been cared for by Child's foster parents and not by Mother. TCO, filed October 3, 2019, at 6 (citing N.T., 8/16/2019, at 13-16). Ergo, Child would have been without the "essential parental care" needed for her "physical . . . well-being" under subsection (a)(2) if she had to rely upon Mother for such necessities.

For the final element, concerning whether the causes of the parent's incapacity can or will be remedied, **see T.L.C.**, 199 A.3d at 1278, this Court had adopted the trial court's finding when Mother's parental rights to J.K.A.B. were terminated that Mother had "**fail[ed] to remedy** the conditions that brought [J.K.A.B] into care in a reasonable period of time[.]" Exhibit DHS-16, **J.K.A.B.**, No. 4802 EDA 2017, at 11 (emphasis added) (quoting Docket Numbers CP-51-AP-0000775-2017 and CP-51-DP-0002461-2014, filed February 16, 2018, at 4). When asked during the recent termination hearing whether there was "anything [M]other could do to rehabilitate . . . her ability to care for [C]hild[,]" Dr. Russell replied that "her functioning is fairly stable"

---

[5] There is no contention that the other means of proving this first element – "abuse, neglect or refusal" – are applicable to Mother's circumstances. **T.L.C.**, 199 A.3d at 1278. Likewise, there is no suggestion of "affirmative misconduct." **Id.**

without "much room to change . . . in the near future[.]" N.T., 8/16/2019, at 30; **see also** TCO, filed October 3, 2019, at 5-6 (summarizing Dr. Russell's testimony that "it was **unlikely** that Mother could **remedy** the conditions that brought the Child into care" (emphasis added)). Ergo, the evidence established that the exact same conditions have persisted for at least five years and the cause of Mother's inability to care for her children has not been and likely can never be remedied. **See** 23 Pa.C.S.A. § 2511(a)(2); **T.L.C.**, 199 A.3d at 1278.

As for Mother's insistence that she had satisfied her "SCP goals" and "had followed the recommendations [of] the PCE[,]" Mother's Brief at 10, which presumably would go towards the question of whether Mother's incapacity can or will be remedied, **see** 23 Pa.C.S.A. § 2511(a)(2); **T.L.C.**, 199 A.3d at 1278, we find that Mother's assertions are belied by the evidence. Both Mother's PCE recommendations and SCP objectives included finding employment and developing a sustainable financial plan, and, according to Keyan's testimony, Mother has failed to achieve either aim. TCO, filed October 3, 2019, at 2-3, 6 (citing N.T., 8/16/2019, at 43). Furthermore, Mother failed to direct us to any evidence that contradicted Keyan's testimony. **See** Mother's Brief at 8-11.

Even if Mother had accomplished some of her PCE recommendations and SCP objectives, her parental rights cannot be preserved while waiting for her to realize the remainder of these goals. **See In re K.Z.S.**, 946 A.2d 753,

759 (Pa. Super. 2008) ("[p]arental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs"). Her further justification that she "had participated in the services afforded to her through [DHS,]" Mother's Brief at 11, likewise does not prevent termination of her parental rights. **See In re J.T.**, 817 A.2d 505 (Pa. Super. 2003) (where record supported conclusion that mother was unable to care for children without continued involvement from Children and Youth Services, termination was proper).

Based on the foregoing, we find that the trial court did not err nor abuse its discretion in finding that the statutory grounds for terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) were established through clear and convincing evidence. **See B.J.Z.**, 207 A.3d at 921. In reaching this conclusion, we are reminded of the words of our Supreme Court:

> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

**In re Adoption of S.P.**, 47 A.3d 817, 827 (Pa. 2012).

*23 Pa.C.S. § 2511(b)*

Since a court must engage in a bifurcated process prior to terminating parental rights, **B.J.Z.**, 207 A.3d at 921, we next consider Section 2511(b), which provides:

> The court in terminating the right of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child.  As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act.  Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis.  While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.  Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

**G.M.S.**, 193 A.3d at 401 (citation and internal brackets omitted) (some formatting).

Mother generally alleges that DHS "failed to establish by clear and convincing evidence that relinquishment of [her] parental rights best meet[s]

the developmental, physical and emotional needs and welfare of Child."
Mother's Brief at 11. Mother's attack on the trial court's conclusion as to
Section 2511(b) consists mainly of challenging the sufficiency of the evidence
in support of its determination that no bond existed between Child and Mother.
*Id.* at 13 (trial court "was never presented with enough information to
determine whether there was a bond between [Child] and [M]other").

Mother proposes that a bonding evaluation should have been conducted.
*Id.* However, "[a]s this Court has explained, Section 2511(b) does not
explicitly require a bonding analysis and the term 'bond' is not defined in the
Adoption Act." *G.M.S.*, 193 A.3d at 401.

Mother also propounds that the trial court should not have relied solely
on Keyan's testimony for its analysis of the emotional bond. Mother's Brief at
13.[6] The trial court "deemed" Keyan's testimony "to be credible and accorded
[it] great weight." TCO, filed October 3, 2019, at 6. As noted above, "[t]he
trial court is free to believe all, part, or none of the evidence presented and is
likewise free to make all credibility determinations and resolve conflicts in the
evidence." *B.J.Z.*, 207 A.3d at 921. This Court cannot and will not reweigh
this evidence and substitute our judgment for that of the trial court. Moreover,
"[i]n cases where there is no evidence of any bond between the parent and

---

[6] To the extent that Mother contests that the absence of testimony "from the
DHS worker[,]" her brief is unclear as to whom she is referring. Mother's Brief
at 13.

- 16 -

child," such as the current action, "it is reasonable to infer that no bond exists." ***In re Q.R.D.***, 214 A.3d 233, 243 (Pa. Super. 2019).

Even assuming that some evidence of a bond existed, "a parent's emotional bond with his or her child . . . is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." ***G.M.S.***, 193 A.3d at 401. Overall, Mother fails to articulate why termination of her parental rights was not in Child's best interest, only making the bald statement that "there was insufficient evidence to establish that it was in the best interest of the child to be adopted." Mother's Brief at 12. Even if her argument were more detailed, we would still note that Keyan explicitly testified "that it would be in the Child's best interest if the Mother's parental rights were terminated." TCO, filed October 3, 2019, at 6 (citing N.T., 8/16/2019, at 13-16).

Other factors considered by the trial court included Keyan's testimony that Child would suffer no detrimental effects if Mother's parental rights were terminated and that "Mother was unable to keep up with Child's significant medical needs[,]" which include Child's problems with digestion, drooling, eyesight, hearing, and sleep. ***Id.*** (citing N.T., 8/16/2019, at 13-16); ***see*** N.T., 8/16/2019, at 13, 41-42, 48; ***see also G.M.S.***, 193 A.3d at 401. Additionally, the trial court acknowledged that "Keyan[] testified that Child's foster parents addressed the Child's daily physical, medical and educational needs[,]" including providing her with occupational, physical, and speech

therapy. TCO, filed October 3, 2019, at 6 (citing N.T., 8/16/2019, at 13-16); *see* N.T., 8/16/2019, at 13, 48. Again, Mother presented no evidence to the contrary. Pursuant to the language of Section 2511(b) itself, the trial court must "give **primary** consideration to the developmental, physical and emotional **needs** and welfare of the child." 23 Pa.C.S. § 2511(b) (emphasis added); *see also G.M.S.*, 193 A.3d at 401 ("analysis pursuant to Section 2511(b)" is a "determination of the needs and welfare of the child"). Accordingly, the trial court had every right to emphasize Child's significant physical and medical needs when making its Section 2511(b) determination.

Finally, we observe that Mother's brief fails to address the role that considerations of permanency and safety must play in a Section 2511(b) best-interest analysis. *See G.M.S.*, 193 A.3d at 401 (trial court can "emphasize the **safety** needs of the child, and should also consider the intangibles, such as the love, comfort, **security**, and **stability** the child might have with the foster parent" (emphasis added)). Three other children, aged five years and under, died while in Mother's care over the course of less than five years, thereby seriously calling into question Mother's ability to provide safety and security for any child in her care. TCO, filed October 3, 2019, at 2; Exhibit DHS-10. PCEs conducted subsequent to those deaths, in 2015 and 2017, concluded that Mother continued to "lack[] the capacity to provide **safety** and **permanency** for her children" due to significant cognitive impairment. TCO, filed October 3, 2019, at 2 (emphasis added). After a third PCE conducted

was a year later, the evaluator found that Mother was "still unable to provide **safety** and **permanency**" for Child. N.T., 8/16/2019, at 27. Accordingly, the evidence established that Child's need for safety and continuity of relationships would best be achieved by terminating Mother's parental rights. ***G.M.S.***, 193 A.3d at 401.

Thus, we conclude that the trial court did not err nor abuse its discretion in finding that the statutory grounds for terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(b) were established through clear and convincing evidence. ***See B.J.Z.***, 207 A.3d at 921.

\* \* \*

For the reasons set forth above, we conclude that the trial court appropriately terminated Mother's parental rights under 23 Pa.C.S. § 2511(a)(2) and (b) at No. AP-573. ***See B.J.Z.***, 207 A.3d at 921. In addition, we quash the appeal from Child's permanency goal change at No. DP-999.

Order affirmed at No. AP-573. Appeal quashed at No. DP-999.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 1/29/2020*